UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------X
Osman, Khaled                             )
                                          )
        Plaintiff,                        )
                                          )    PETITION FOR
                                          )    MANDAMUS
-against-                                 )
Mr. Michael Chertoff, Secretary of DHS;   )
Mr. Emilio T. Gonzalez, Director of USCIS; )
Ms. Mary Ann Gantner,                     )    Index No.
USCIS District Director in New York;      )
Mr. Robert S. Mueller, III,               )
Director of the FBI;                      )
Mr. Mark J. Mershon,                      )
Assistant Director of the FBI in New York )
All sued in their individual             )
and official capacities                   )
                                          )
        Defendants.                       )
------------------------------------------X
```

07 CV 2844

JUDGE CEDARBAUM

APR 0 9 2007

CASHIERS

1.

Plaintiff, Mr. Khaled Osman, by and through his undersigned Attorneys, Manchanda Law Offices PLLC, files this Complaint seeking an order compelling Defendants to perform their duty of adjudicating Plaintiff's application for a benefit pending at the New York District Office of USCIS. Plaintiff seeks affirmative relief and damages against Defendants, Mr. Michael Chertoff, Secretary of DHS; Mr. Emilio T. Gonzalez, Director of USCIS; Ms. Mary Ann Gantner, USCIS District Director in New York; Mr. Robert S. Mueller, III, Director of the FBI; Mr. Mark J. Mershon,

06-10302) on behalf of my constituent Mr. Osman who resides in my district." See **Exhibit G, Letter of Mr. Vito J. Fossella, Member of Congress, regarding Plaintiff's application, dated November 21, 2006.**

10.

Plaintiff was fingerprinted in 2004 or 2005. He was also scheduled for NSEERS (National Security Entry Exit Registration System) registration on April 4, 2006. *See* **Exhibit F, Notice of NSEERS Enrollment from Ms. Mary Ann Gantner, District Director of USCIS, New York City Office dated March 21, 2006.** Plaintiff went to the NSEERS appointment and has not received any new information related to his case. *See* **Exhibit G, Letter of Mr. Vito J. Fossella, Member of Congress, regarding Plaintiff's application, dated November 21, 2006.**

11.

The New York City USCIS District Office is currently processing I-485 cases (Petition to Register Permanent Residence or Adjust Status) with receipt notice dates of **January 04, 2006.** *See* **Exhibit H, USCIS New York City NY processing Dates, Posted January 17, 2007. Plaintiff applied for Adjustment of Status on December 20, 2001,** See **Exhibit A, Decision of U. S. Department of Homeland Security dated August 2, 2003.** Plaintiff's I-485

application has been unreasonably **delayed for more than four years.**

Plaintiff has no other remedies available. First, there are no administrative remedies to exhaust because Plaintiff is not challenging a final agency decision. See *Yu, 36 F.Supp.2d*. Second, Plaintiff contacted Defendants via infoPass appointments at least four times each year since 2003 and many times through the local Congressional Unit without a response, and has approached the Court after exhausting all the other options.

12.

The allegations of the complaint, unless patently frivolous, are taken as true to avoid tackling the merits under the ruse of assessing jurisdiction. See *Jones v. Alexander,* 609 F.2d 778, 781 (5th Cir.1980).

**LEGAL BASIS**

**TEST OF JURISDICTION**

13.

The terms of **8 U.S.C. § 1361** provide: The District Courts shall have original jurisdiction of any action in the nature of Mandamus to compel an officer or employee of

the United States or any agency thereof to perform a duty owed to the plaintiff.

14.

To determine whether jurisdiction is appropriate in actions in which unreasonable delays in agency actions are challenged, courts use the elements required to warrant relief to assess whether the plaintiff has established a prima facie case, warranting the exercise of jurisdiction over the dispute. See *Hernandez-Avalos*, 50 F.3d at 844; *Carpet*, 656 F.2d at 566-67; *Ocuto Blacktop and Paving Co., Inc. v. Perry*, 942 F.Supp. 783, 786 (N.D.N.Y.1996). "The test for jurisdiction is whether mandamus would be an appropriate means of relief." See *Jones v. Alexander*, 609 F.2d 778, 781 (5th Cir.1980) (citing *Carter v. Seamans*, 411 F.2d 767, 770 (5th Cir.1969)).

15.

Thus, federal jurisdiction to grant a Writ of Mandamus depends upon three elements: "A plaintiff must show a clear right to the relief sought, a clear duty by the defendant to do the particular act, and that no other adequate remedy is available." See *United States v. O'Neil*, 767 F.2d 1111, 1112 (5th Cir.1985) (quoting *Green v. Hedler*, 742 F.2d 237, 241 (5th Cir.1984)).

8

**APA** does not provide an independent basis of subject matter jurisdiction. See *Califano v. Sanders,* 430 U.S. 99, 107 (1977). However, a federal district court has jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." See **28 U.S.C. § 1331.** This statute, in combination with the **APA,** vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld. See *Sierra Club v. Glickman,* 156 F.3d 606, 617 (5th Cir.1998) (holding that a suit to compel agency action could be brought under APA); see also *Fu v. Reno,* Civ. A. 3:99-CV-0981-L, 2000 WL 1644490 (N.D.Tex. Nov. 1, 2001) (same).

18.

"[A]dministrative agencies do not possess the discretion to avoid discharging the duties that Congress intended them to perform." **Forest Guardians, 164 F.3d at 1269.** Thus, "a court may require an agency to take action upon a matter, without directing how it shall act." **Id.** at 1271 (quoting **Attorney General's Manual on the Administrative Procedure Act, at 108 (1947)).**

19.

Most courts have not hesitated to exercise jurisdiction to compel the performance of this duty. See *Paunescu v. Immigration* and *Naturalization Service,* 76

F.Supp.2d  896  (N.D.Ill.1999).  Characterizing  the
Plaintiffs' experience as a "bureaucratic nightmare," the
court ordered the Agency to grant the plaintiffs all relief
"to which they would have been entitled had defendants
processed their applications in a timely fashion." Id. at
903. Also see _Marcetic v. Immigration and Naturalization
Service,_ 1998 WL 173129 (N.D.Ill.1998); _Wan Shih Hsieh v.
Kiley,_ 569 F.2d 1179, 1182 (2d Cir.1978) (duty to act on
visa application); _Yu,_ 36 F.Supp.2d at 931 (duty to process
application for adjustment of status within reasonable
time); _Agbemaple v. INS,_ 1998 WL 292441 *2 (N.D.Ill. May
18, 1998) (same); _Fraga v. Smith,_ 607 F.Supp. 517, 521
(D.C.Or.1985) (duty to process citizenship applications).

20.

"In our opinion, when an agency is required to act--
either by organic statute or by the **APA**--within an
expeditious, prompt, or reasonable time, **§ 706** leaves in
the courts the discretion to decide whether agency delay is
unreasonable." See **Forest Guardians, 164 F.3d at 1271.** The
adjudication must occur within a reasonable time. A
contrary position would permit USCIS, DHS and other related
agencies to delay indefinitely. Congress could not have
intended to authorize potentially interminable delays.

21.

11

As a matter of law, [the plaintiff] is entitled to a decision (as to his application to USCIS) **within a reasonable time**, and that it is within the power of the court to order USCIS to process the application. see Agbemaple v. INS, 1998 WL 292441 *2; see also **2 Am.Jur.2d Administrative Law § 379** ("Even though agency action may be subject to no explicit time limit, a court may compel an agency to act within a reasonable time.") Thus, Defendants owe Plaintiff a non-discretionary duty to complete processing of Plaintiff's application **during a reasonable time.**

## UNREASONABLE DELAY

### 22.

Decisions from many jurisdictions suggest that delays **approximating two years from the date of filing** are unreasonable. See, e.g. _Paunescu v. INS_, 76 F.Supp.2d 896, 900-901 (N.D.Ill.1999) at 902 (2 year delay); _Yu_, 36 F.Supp.2d at 935 (2 1/2 year delay); _Agbemaple_, 1998 WL 292441 *2 (20 month delay); _Jefrey v. INS_, 710 F.Supp. 486, 488-89 (S.D.N.Y 1989) (16 month delay).

### 23.

Currently, the New York City District Office of USCIS is processing I-485 cases (Petition to Register Permanent Residence or Adjust Status) with a receipt notice date of

January 04, 2006. *See* Exhibit H, USCIS New York City NY processing Dates, Posted January 17, 2007. "On December 20, 2001, Plaintiff applied for adjustment of status (Form I-485) with the U.S. Immigration and Naturalization Service." The decision states that the filing date of Plaintiff's Application for Adjustment of Status was December 20, 2001. See Exhibit A, Decision of U. S. Department of Homeland Security dated August 2, 2003. Plaintiff's I-485 application has been unreasonably delayed for more than four years.

## CLEAR RIGHT TO THE RELIEF

### 24.

In order to prove that the Plaintiff has a clear and certain right to Mandamus relief, Plaintiff has to show that (1) he has no other adequate remedy available and (2) he has established a prima facie case that Defendants have violated the non-discretionary duty owned to him.

## NO OTHER REMEDY AVAILABLE

### 25.

Plaintiff has no other remedies available. First, there are no administrative remedies to exhaust because Plaintiff is not challenging a final agency decision. See *Yu,* 36

F.Supp.2d. Unless and until the Immigration Service decides Plaintiff's application, Plaintiff remains in perpetual limbo--he cannot become a permanent resident or seek judicial review of an adverse decision on his application.

26.

Second, Plaintiff contacted Defendants via infopass appointments at least four times each year since 2003 and many times through the local Congressional Unit without a response. The fact that Plaintiff received no response from USCIS proves that no other remedy is available. See **Exhibit E, Information furnished by the Congressional Unit in New York City dated June 20, 2005. Exhibit G, Letter of Mr. Vito J. Fossella, Member of Congress, regarding Plaintiff's application, dated November 21, 2006.**

27.

"By definition, a claim of unreasonable delay cannot await final agency action before judicial review, as the very lack of agency action is what gives rise to the complaint." **2 Am.Jur.2d Administrative Law § 379; TRAC, 750 F.2d at 75** (the lack of final order is the "gravamen" of the complaint and does not preclude judicial review); **Public Citizen Health Research Group, 740 F.2d at 32; Deering Milliken, 295 F.2d at 865 (4th Cir.1961).** Likewise, Plaintiff has no administrative remedies available to him

14

30.

Further, the New York City District Office at USCIS is currently processing I-485 cases (Petition to Register Permanent Residence or Adjust Status) with Receipt Notice Dates of **January 04, 2006**. *See* **Exhibit H, USCIS New York City NY processing Dates, Posted January 17, 2007.** Plaintiff's I-485 application has been unreasonably **delayed for more than four years.** This is sufficient to establish that Defendants have unreasonably delayed in acting on Plaintiff's application. For the purposes of establishing jurisdiction Plaintiffs are entitled to the inference that a delay of this length is unreasonable. See *Agbemaple*, 1998 WL 292441 *2.

31.

An applicant for status adjustment who has waited more than one year for a decision by the USCIS establishes a prima facie case for Mandatory Injunction under the **Administrative Procedure Act (APA)**; the INS owes a clear duty to process applications within a reasonable time, the agency's duty is mandatory and not discretionary, and an applicant has a clear right to relief based on length of delay and lack of other means to challenge the agency's failure to act. See **5 U.S.C.A. §§ 555(b), 706(1);**

Immigration and Nationality Act, 8 U.S.C.A. § 1103; 8 C.F.R. § 245.2.

## JURISDICTION ESTABLISHED

### 32.

More to the point, courts have specifically recognized jurisdiction under **28 U.S.C. § 1331** and the **APA** to hear challenges to USCIS delays in processing visa, LPR, and citizen applications. See Fraga v. Smith, 607 F.Supp. 517, 520 (D.Or.1985) (jurisdiction under APA for challenge to INS (now USCIS)delay in processing citizen applications for foreign born citizens); Sze v. INS, 1997 WL 446236, *5 (N.D.Cal.1997) (jurisdiction under **28 U.S.C. § 1331** for challenge to delay in processing naturalization applications because the issues in the case require interpretation of federal immigration statutes and regulations). "Our function in such cases is to assure the vitality of the congressional instruction that agencies conclude matters presented to them 'within a reasonable time.' See **Amer. Feder. of Gov. Employees, AFL-CIO, 790 F.2d at 117.**

### 33.

Mandamus jurisdiction has been established in many cases under similar circumstances to those in the case before the Court. See Yu v. Brown, 36 F.Supp.2d 922, 932 (D.N.M.1999).

One of the plaintiffs in *Yu* had submitted her application for legal permanent residence two and a half years earlier. Id. She later learned that her fingerprints had not cleared and refiled her fingerprint card. Id. Judge Vasquez concluded that the defendants, including the INS, had a non-discretionary duty to process the plaintiffs' applications and held that the defendants had breached this duty by failing to act on Yu's application within a year of the time she refiled her fingerprint card. Id. at 933. Other courts have found that the agency had a mandatory duty to adjudicate applications for adjustment of status. See, e.g., *Iddir v. I.N.S.*, 301 F.3d 492, 500 (7th Cir.2002) ("the relevant statutes and regulations confirm that the INS did have the duty to adjudicate the appellants' applications in a reasonable period of time."); *Razik v. Perryman*, Nos. A76-775-899-902, 2003 WL 21878726, *2 (N.D.Ill. Aug. 7, 2003); *Krishnamoorthy, v. Ridge*, No. 03 C 415, 2003 WL 21204051 (N.D.Ill. May 19, 2003); *Setharatsomphou v. Reno*, No. 98 C 7076, 1999 WL 755292 (N.D.Ill. Sept. 27, 1999); *Paunescu v. INS*, 76 F.Supp.2d 896, 900-901 (N.D.Ill.1999); *Agbemapble v. I.N.S.*, No. 97 C 8547, 1998 WL 292441, *2 (N.D.Ill. May 18, 1998).

34.

As proved above, Plaintiff filed his application for LPR status on **December 20, 2001**, more than **five years ago**. The New York City Office of USCIS is currently processing I-485 cases (Petition to Register Permanent Residence or Adjust Status) with receipt notice date of **January 04, 2006**. Plaintiff's I-485 application has been **unreasonably delayed for more than four years,** which is much longer than the delay in the above-mentioned cases. Also, just because a delay is "not unusual" does not make it reasonable. See *Jefrey v. INS*, 710 F. Supp. 486 (S.D.N.Y. 1989).

## LOSS OF SOCIAL SECURITY BENEFITS

35.

Plaintiff has suffered from loss of social security benefits since his I-485 application has been **unreasonably delayed for more than four years.**


It has been very difficult for Plaintiff to find a job because of his status. He was forced to work for himself and suffered from loss of social security benefits during the time of his unemployment. See **Exhibit J, Proof of Plaintiff's self-employment.**

19

Plaintiff's wife was laid off in September 2002 and unable to find a job for a long time. At the same time, she was pregnant with their first child. Because of Plaintiff's status, the family suffered from the loss of social security benefits and had to depend on the kindness of others to get through the difficult times. They had no medical benefits. Plaintiff was making $200 a week at that time and his wife was forced to go on Medicaid. The family has been forced to depend on the wife's salary until now.

## PLANTIFF'S FAMILY SUFFERED FROM MENTAL DEPRESSION AND STRESS AS A RESULT OF DEFENDANT'S DELAY

35.

Since Plaintiff was neither a Lawful Permanent Resident nor a United States Citizen, he had great difficulty in trying to enter the United States in May 2002. He was questioned and harassed on whether his marriage was a sham marriage or whether he married his wife for money. Thus, Plaintiff has been unable to travel back to Egypt to visit his parents since **May 2002**, and has in fact been deprived of the right to visit his parents. Plaintiff's son is three and a half years old, but he has never met Plaintiff's parents.

36.

20

Plaintiff's father is almost **ninety** years old now. His mother has had surgery and is in very bad health. Plaintiff also has ten brothers and sisters whom he has been unable to see in Egypt for almost **five years.**

37.

Plaintiff has been very worried about how old his parents would be when he finally becomes a lawful permanent resident and travels back to Egypt to visit his parents. His parents have been very sad about being unable to see him and the emotional stress has affected his mother's health.

38.

The situation has caused great stress to Plaintiff's wife, who is a United States Citizen, and her marriage with Plaintiff. The couple has made efforts to avoid the delay of processing of Plaintiff's application during the past six years and has become more and more frustrated and distressed.

39.

Plaintiff and his family are the victims of a bureaucratic nightmare. They should not be penalized for the Government's malfeasance and neglect. Plaintiff's application has been pending for **over five years** since it was first filed and has been **unreasonably delayed for more**

21

**than four years.** Thus, Defendants have a ministerial duty to consider Plaintiff's application and may not unreasonably delay the performance of that duty.

## A SEPARATE HEARING FOR THE PURPOSE OF DETERMINING THE AMOUNT OF DAMAGES IS REQUESTED

40.

Plaintiff has had difficulties traveling back to Egypt and has not seen his parents in Egypt for over three years because of his status. He has been worried about his Immigration status and his parents very much.

"Mrs. Jeanne Osman (Plaintiff's wife, a United States Citizen) has developed a **Major Depressive Disorder** as a direct result of her fear that her husband, Mr. Khaled Osman, may have to return to Egypt, at some point. Her symptoms include sleep disturbance, overeating to mask depressive symptomatology, weight gain, difficulty focusing and concentrating, persistent sadness, chronic anxiety, crying spells, loss of sexual libido, and suicidal ideation." See **Exhibit K, Affidavit of Mr. Stephen Reich, Ph.D.** Mrs. Osman is currently under treatment for her **Major Depressive Disorder.**

22

"Mrs. Osman is completely responsible for the care of her father...Her father is on oxygen 24 hours a day, 7 days a week, . . . Jeanne Osman said she will not go to Egypt, in the event that her husband has to return to that country, because of her responsibilities to her father, and her fear that as United States citizens living in Egypt, she will be putting herself and her son at risk." See **Exhibit K, Affidavit of Mr. Stephen Reich, Ph.D.**

"Youself Osman (Plaintiff's son, a United States Citizen) is a gifted, spontaneous, highly interactive 3 ½-year-old boy, ...If he becomes separated from his father, he will develop a Separation Anxiety Disorder and depressive symptomatology." See **Exhibit K, Affidavit of Mr. Stephen Reich, Ph.D.**

"It is my opinion that it would represent an extreme hardship to Jeanne Osman and Youself Osman in the event that Khaled Osman returned to Egypt." See **Exhibit K, Affidavit of Mr. Stephen Reich, Ph.D.**

Plaintiff is hereby requesting for a separate hearing for the purpose of determining the amount of damages he and his family have suffered as a result of Defendants' delay of his naturalization. Plaintiff is entitled to the loss

23

of social security benefits and the damage of emotional pain his family has suffered for **over five years** of application process, including the Attorneys' Fees and Court Costs for filing this lawsuit, especially when his wife has **developed a Major Depressive Disorder** as a direct result of the delay of Defendants. See *Adelaida Garcia v. Vernon Mcaninch*, 435 F. Supp. 240; 1977 U.S. Dist. Lexis 14720.

## CAUSES OF ACTION

### 1. FIRST CAUSE OF ACTION

### VIOLATION OF 5 U.S.C. § 555 (b) FOR FAILURE TO DECIDE PLAINTIFF'S APPLICATION FOR OVER FIVE YEARS AFTER IT WAS FILED

41.

Plaintiff repeats and realleges paragraphs 7-12.

42.

Defendants failed to decide Plaintiff's Application within a reasonable time, which violates **APA, 5 U.S.C. § 555 (b)**: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."

24

## 2. SECOND CAUSE OF ACTION

## VIOLATION OF 5 U.S.C. § 555 (b) FOR FAILURE TO GIVE PLAINTIFF ANY RESPONSE FOR 20 MONTHS AFTER PLAINTIFF FILED HIS APPLICATION

43.

Plaintiff repeats and realleges paragraphs 7-12.

44.

Plaintiff filed his application on December 20, 2001 and was denied on August 2, 2003 without being given any specific reasons, even though he has a bona fide marriage with a United States Citizen. Plaintiff did not receive any response from Defendants regarding his application for about 20 months after he filed his application. It is a violation of **APA, 5 U.S.C. § 555 (b)**.

## 3. THIRD CAUSE OF ACTION

## VIOLATION OF 5 U.S.C. § 555 (b) FOR FAILURE TO DECIDE PLAINTIFF'S APPLICATION FOR TWO AND A HALF YEARS AFTER PLAINTIFF'S INTERVIEW

45.

25

Plaintiff repeats and realleges paragraphs 7-12.

46.

Plaintiff attended the interview with his US Citizen spouse conducted by Officer Nueves at 26 Federal Plaza, New York, New York on September 20, 2004. A security background check on Plaintiff has been pending for two and a half years. It is a violation of **APA, 5 U.S.C. § 555 (b)**.

## PRAYERS FOR RELIEF

WHEREFORE, on the basis of the foregoing, Plaintiff prays that this Court:

1.  Order that Defendants adjudicate Plaintiff's I-485 Application without any further delay.

2.  Award Plaintiff damages for the loss of social security benefits and the emotional pain he and his family has suffered at the amount determined by a separate hearing together with Plaintiff's Court Costs and Attorney's Fees.

Dated:     New York, New York

April ___9___ , 2007

Respectfully Submitted

By: Rahul Manchanda, Esq.
Manchanda Law Office PLLC
80 Wall Street, Suite 705
New York, New York 10005
Tel: 212-968-8600
Fax: 212-968-8601
Attorneys for the Petitioner

27